## 22378. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY et al. v. CASTLEBERRY.

DECIDED NOVEMBER 18, 1932.

*Harry L. Greene, McDaniel, Neely & Marshall,* for plaintiffs in error.

*Abrahams, Bouhan, Atkinson & Lawrence,* for persons at interest, not parties.

*Chester A. Byars,* contra.

PER CURIAM. On April 15, 1930, J. A. Castleberry sustained severe injuries arising out of and in the course of his employment with Georgia Kincaid Mills No. 4, at Griffin, Ga. Under an agreement approved by the industrial commission, Castleberry was paid compensation at the rate of $7 a week for a period of twenty weeks. Such compensation was discontinued by order of the industrial commission upon the report of the attending physician that the employee's disability resulting from said injuries had ceased and that he could go back to work on September 15, 1930. The said physician reported also that Castleberry had been suffering from his gall bladder for about eight weeks and was in a jaundiced and weakened condition. On April 5, 1931, Castleberry died, and his widow, Mrs. J. A. Castleberry, filed her claim for compensation. Commissioner Land made an award for the use and benefit of the applicant and her minor son, Raymond Castleberry, which award included "$100 to apply on the expenses of the last sickness and funeral."

On appeal the full commission also made an award in favor of the applicant and her said son, but this award included the following items: $200 to Dr. A. H. Fry "for medical services rendered the employee . . during his last sickness;" $460 to Dr. A. H. Huckabee "for medical services rendered Joe A. Castleberry . .

during his last sickness," and $82 to Griffin Hospital "for services rendered Joe A. Castleberry . . during his last sickness."

The employer and the insurance carrier entered an appeal to the superior court upon the following grounds:

"1. That the industrial commission acted without and in excess of its powers. . .

"2. There is not sufficient evidence in the record to support the award.

"3. The facts found by the industrial commission do not support said award.

"4. The award . . is contrary to law: (a) Because the undisputed evidence in the case showed and demanded the finding that the death of Joe Castleberry was caused by and resulted solely from a disease in no way connected with his employment. (b) Because there was no evidence to show that the death of Joe Castleberry occurred during the period of disability caused by the accident sustained by him, or that the death resulted proximately from said accident.

"5. The award of the industrial commission, and especially that part thereof which requires appellants to pay medical expense to Dr. A. H. Fry in the sum of $200, and to Dr. A. H. Huckabee in the sum of $460, and $82 to the Griffin Hospital, is contrary to law: (a) Because such medical expense was not incurred during the first thirty days following the accident sustained by Joe Castleberry. (b) Because the evidence showed that appellants had already paid more than $100 as medical expenses in said case, and they could not be required to pay any sum in excess of $100 as medical expenses. (c) Because said medical expenses were incurred without the knowledge or consent of appellants, and during the time when appellants were furnishing, of their own free will and accord, satisfactory medical attention to the employee, and not under any legal obligation."

Unquestionably the accident arose out of and in the course of Castleberry's employment. Did his death result from the accident? It is not disputed that he suffered a fracture of the skull, a concussion of the brain, and a fracture of the right arm. The preponderance of the evidence is that he received severe bruises on his right side near his liver, that before the accident he was a strong, healthy man weighing about 190 pounds, that he gradually

grew worse until he died, weighing only about one hundred pounds, and that he was never able to do any work after his accident. There was also testimony to the effect that he had severe vomiting spells after the accident, and that it was likely that such spells resulted from a traumatic injury to his liver.

Dr. A. H. Fry testified, in part, that he operated on Castleberry in the fall of 1930 and found that he had a "small, contracted liver, with a bunch of adhesions;" that "it was surmised that the adhesions were caused from trauma or injury;" and that witness was of the opinion that the patient died from cirrhosis of the liver, resulting from a traumatic injury. Dr. A. H. Huckabee testified, in part, that Castleberry's gall bladder was contracted to about one fourth of its normal size, and that "the adhesions of the liver . . were attached to it." Dr. George E. Klugh testified, in part, that an examination made by him in April, 1931, disclosed that Castleberry had congestion of the liver and mild chronic nephritis, and that, in witness's opinion, he died as a result of septic infection "resulting from the traumatic injury to his liver." Dr. Fred Hames testified, in part, that he examined Castleberry about three days after his accident and found no evidence of any injury to his abdomen, and that he died of cirrhosis of the liver, which was in no wise due to any injury. Dr. Evans B. Wood was of the opinion that Castleberry's jaundiced condition "was caused by some type of infection not traceable to the injury."

The record is voluminous, and we have merely indicated the trend of the testimony of some of the witnesses. Our conclusion is in accord with that of the single commissioner and the full commission; that is to say, we are satisfied that there is competent evidence to support the theory that Castleberry's death resulted naturally and proximately from the accident. We are also satisfied that the evidence supports the compensation of $1,688.32 awarded to the applicant and her minor son.

The awards in favor of the doctors and the hospital were based upon section 38 of the Georgia workmen's compensation act as amended, which in part is as follows: "Sec. 38. When an employee is entitled to compensation under this act for an injury received, and death ensues from any cause not resulting from the injury for which he was entitled to the compensation, payments of the unpaid balance for such injury shall cease and all liability

therefor shall terminate. If death results instantly from an accident arising out of and in the course of the employment, or if during the period of disability caused by an accident death results proximately therefrom, the compensation under this act shall be as follows: (a) The employer shall, in addition to any other compensation, pay the reasonable expenses of the employee's last sickness and burial expenses not to exceed $100. If the employee leaves no dependents, this shall be the only compensation." Michie's Code (1926), § 3154 (38).

Counsel for the plaintiff in error argues with much force that section 38 of the act should be construed in the light of sections 26 and 27 of the same act (Michie's Code (1926), § 3154 (26, 27)), and that it would be unreasonable and unjust to construe the "reasonable expenses of the employee's last sickness" as covering an unlimited period of time intervening between the accident and the employee's death; but a careful study of sections 26 and 27 leads us to the conclusion that they refer strictly to non-fatal accidents. On the other hand, it is obvious that section 38 deals with cases where death results from the accident. It will be observed that in fatal cases the rate of compensation is less than in non-fatal cases, and that the possible maximum compensation is considerably less. As we see it, the design of the lawmakers is quite different in the two cases. Our conclusion is that section 38 (a) means precisely what it says; that is to say, that "The employer shall, in addition to any other compensation, pay the reasonable expenses of the employee's last sickness and burial expenses not to exceed $100. . ."

There was evidence that Dr. Huckabee's medical services were worth $460. Dr. Fry testified that his bill for $200 was made up of an item of $150 for an exploratory operation, and of a $50 charge for services rendered at the autopsy. Under section 28 of the act, "The employer, or the industrial commission, shall have the right in any case of death to require an autopsy at the expense of the party requesting the same." It is deducible from the record before us that the employer or the insurance carrier called for the autopsy, and Dr. Fry's testimony is in effect that he took part in the autopsy at the special instance and request of the insurance carrier's physician. The hospital charge was proved. It is certainly shown by the evidence that Castleberry was very seriously injured, and that he continued to grow worse until he died. Our

64

conclusion is that the expenses referred to, with the exception of the autopsy charge, were incurred during the employee's "last sickness." The commission found that those expenses were "reasonable," and it appears to us that the finding was correct. Therefore, the premises considered, we hold that the judgment of the superior court affirming the award of the industrial commission is correct.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur. MacIntyre, J., not presiding.*